UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


ROGER and MARGUERITE CARTER,     )
LARRY and MARTHA HORN, TOM and   )
JULIE MOLL and DANIEL and LAURA  )
PONGRATZ,                        )          1:11-cv-1286-RLY-DKL
        Plaintiffs,              )
                                 )
    vs.                         )
                                 )
STATE FARM FIRE AND CASUALTY     )
COMPANY, DONAN ENGINEERING       )
COMPANY, INC., AMERICAN          )
STRUCTUREPOINT CONSULTING, INC. )
d/b/a STRUCTUREPOINT, KEELER     )
WEBB ASSOCIATES, INC. and WILLIAM)
NORMAN,                          )
       Defendants.               )


**ORDER OF  REMAND**


    This lawsuit was removed to this court from Hamilton Superior Court on

September 22, 2011, with Defendants claiming the presence of federal jurisdiction based

upon diversity.  Defendants claim diversity jurisdiction exists, despite the fact that there

are non-diverse parties named as Defendants, because those non-diverse parties have been

fraudulently joined.  Plaintiffs have moved the court to remand this case, arguing that no

party has been fraudulently joined.


    Defendants bear the "heavy burden" of proving fraudulent joinder.  *Paulos v. Naas*

*Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992). "The defendant must show that, after resolving all issues of *fact and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id* (emphasis added). Plaintiffs' claim against the allegedly fraudulently joined defendant is judged more generously than an examination under Rule 12(b)(6). *Conk v. Richards,* 77 F.Supp.2d 956, 960 (S.D.Ind. 1999). As then District Judge David Hamilton opined, it is possible for a court to find that a party is not fraudulently joined, yet the claim is ultimately dismissed for failure to state a claim upon which relief may be granted. *Id* (citing *Batoff v. State Farm Insurance*, 977 F.2d 848, 852 (3rd Cir. 1992)).

In this case, Defendants assert fraudulent joinder based on the lack of substantive viability of the claims and on the fact that those claims would clearly be time-barred by the applicable statute of limitations. No defendant has answered the complaint at this point. Three of the Defendants, State Farm Fire & Casualty ("State Farm"), Keeler Webb Associates, Inc. ("Keeler Webb") and William Norman have filed motions to dismiss following removal of the case. The other two Defendants, American Structurepoint Consulting, Inc. ("Structurepoint") and Donan Engineering Company, Inc. ("Donan Engineering") have sought and been granted additional time in which to respond to the Complaint.

## Factual Background[1]

Plaintiffs are married couples whose homes were insured by State Farm at the time a hailstorm rolled through the greater Indianapolis metropolitan area on April 14, 2006. Each couple filed a claim for roof damage with State Farm, the details of which are provided later in this section. State Farm denied each of the claims.

CPM Construction ("CPM") was a roofing contractor owned by Joseph Radcliff, which State Farm was investigating as early as Spring of 2006. The insurer was looking closely at claims which involved the contractor because it believed he was engaged in the unsavory habit of helping homeowners qualify for new or repaired roofs by passing off intentionally inflicted damage to a roof as legitimate hail or wind damage. Each of the houses owned by the Plaintiffs was one which State Farm believed was involved in CPM's and Radcliff's fraudulent scheme.

State Farm denied each of the Plaintiffs' insurance claims in 2007. In May of 2008, the Carters, the Molls and the Pongratzs each filed petitions with the Marion Circuit Court, seeking to invoke and enforce the appraisal process set forth in their insurance policies, which process is to be utilized when the insured and insurer are unable to agree

---

[1]The factual recitation is based upon the allegations set forth in Plaintiffs' Complaint. Where it was readily apparent that Plaintiffs had a typographical error in the date recited in the allegations, that error was corrected. However, Plaintiffs set forth a number of dates in their allegations that appear to be inherently inconsistent. Where the correct date was not readily apparent, the court accepted the recited date as fact.

on the amount of a loss.  The three petitions were combined and on May 5, 2009, the

Circuit Court granted summary judgment in favor of State Farm, finding that:

1. Petitioners are not entitled to appraisal under the terms and conditions of the policy of insurance because there is no appraisable dispute.
2. Petitioners' claims involve coverage issues and therefore are not subject to appraisal under the terms and conditions of the policy of insurance.
3. The policy of insurance does not provide for appraisal after State Farm has denied the claim.
4. Petitioners' Complaint is barred by the contractual limitation provision in the policy of insurance, which was extended, in writing, by State Farm.

Meanwhile, State Farm followed up on its investigation of CPM and Joseph

Radcliff by suing them for engaging in wide-spread insurance fraud.  Radcliff and CPM

filed a counterclaim for defamation.  A trial was held in May 2011 and most of the

Plaintiffs in this case provided testimony at the trial, indicating they believed their

respective roofs had suffered legitimate hail damage.  Mr. Carter, Mrs. Moll and Mr.

Pongratz each also testified at trial that State Farm had attempted to convince them to file

a vandalism charge against CPM and Radcliff for intentionally damaging their roof, and

in so doing offered them an opportunity to have their claims paid under some other policy

provision in return for filing a criminal complaint.  Radcliff prevailed at trial on his

counterclaim against State Farm, and was awarded a significant amount in damages.  As a

result of the trial, Plaintiffs claim they learned that one of the engineers retained by State

Farm to inpsect roofs had tailored his written report of findings to the specific requests of

State Farm.

## Mr. & Mrs. Carter

The Carters retained Neff Construction to inspect their roof after the hailstorm. Neff found there to be sufficient damage to warrant a full roof replacement. Accordingly, the Carters filed their claim with State Farm on July 20, 2006. State Farm sent several inspectors to the Carters' home, but none claimed to have found any hail damage to the roof. In April 2007, the Carters retained CPM to inspect their roof and, like Neff, it found there to be hail damage. After the Carters requested that State Farm inspect the roof again, the company sent out Defendant William Norman of Keeler Webb Associates. Norman looked at the roof briefly and informed the Carters that it had been vandalized and CPM was at fault. State Farm denied any further payment on the Carters' claim, but the insurer informed them that it would replace the roof under the vandalism provisions of their homeowner's policy if they would file a vandalism claim. The Carters refused and their roof was eventually repaired by a subsequent insurer following another hailstorm.

## Mr. & Mrs. Horn

The Horns filed their hail damage claim with State Farm on July 12, 2006. On February 24, 2007, an inspector retained by State Farm inspected the roof while a representative of CPM was present. After the inspection, the inspector retained by State Farm informed the Horns that there was sufficient damage to warrant a complete roof

replacement.  However, the same inspector came back to the home with a State Farm adjuster less than 24 hours later and took another look at the roof.  During that inspection the adjuster used a coin to demonstrate how a roof could be intentionally damaged.  The Horns were not at home at the time, and after the re-inspection of the roof, State Farm informed the Horns that the company would not replace the roof.

At State Farm's request, in March 2007, Lyle Donan of Defendant Donan Engineering inspected the Horns' roof and opined that the damage was the result of intentional actions.  State Farm subsequently determined that it would neither repair or replace the Horns' roof.  The Horns then financed a complete roof replacement.

## Mr. & Mrs. Moll

The Molls filed their claim for hail damage with State Farm immediately following the storm.  Due to the discontinued nature of their shingles, they interpreted the coverage provided by their policy to allow for a complete roof replacement even if only a single shingle were to be damaged.  On May 28, 2006 State Farm's inspector examined and photographed the Molls' roof and indicated that he found no damage, despite his photographs showing at least one shingle was missing.  A year later, the Molls had CPM inspect the roof.  CPM reported that they found wind and hail damage sufficient to require a new roof.  Based on CPM's inspection, the Molls asked that State Farm re-inspect their roof.

Two representatives of State Farm inspected the Molls' roof on June 21, 2007, with Mr. Radcliff on site as well. The two representatives from State Farm accused Radcliff of intentionally damaging a shingle and then, after concluding their inspection, reported that they found no hail or wind damage. Shortly thereafter, State Farm contacted the Molls and told them that the company would like to send an engineer to inspect their roof. The Molls were also contacted by Thomas Cockerill, a representative from State Farm's special investigations unit, and he told the Molls that the two representatives from State Farm that had recently been to their home to examine the roof had seen Radcliff intentionally folding back and creasing a shingle and that the company had photographic evidence of Radcliff's destructive acts.

Cockerill visited the Molls and took recorded statements from them. He also told the Molls that they should file a report with the police reporting the intentional damage done to their roof by Radcliff and also file a vandalism claim with the insurer to obtain repairs. The Molls refused to do either and also asked that Radcliff be allowed to be present when State Farm's engineer came to inspect the roof. Cockerill indicated it would be inappropriate for Radcliff to be on site when the engineer came to look for intentional damage.

Based upon State Farm's representation that CPM intentionally damaged their roof, the Molls retained John Kidwell, a home inspector, to perform a roof inspection. He did so on July 9, 2007, reporting back that he too found enough hail and wind damage to

warrant a complete roof replacement.

William Norman was retained by State Farm to inspect the Molls' roof on July 30, 2007. The Molls had Tim Lee of T. Lee Engineering on site as well on that date to perform an inspection of the roof at the same time as Mr. Norman. After the inspection, Tim Lee issued a report which stated that he had found sufficient wind and hail damage to require the installation of a new roof. Roofing Consultants, apparently the company Norman was employed by at the time, issued a report which State Farm found unsatisfactory for purposes of establishing vandalism. A representative of the special investigations unit of State Farm contacted Roofing Consultants, asking that the written report be revisited and reissued. State Farm did not review the reports of Tim Lee or John Kidwell, but it continued to deny the Molls' claim for hail and wind damage to their roof.

**Mr. & Mrs. Pongratz**

The Pongratzes filed their claim for roof damage on August 24, 2006. State Farm's representative inspected the roof on September 3, 2006, and reported back that he found no storm related damage. ABC Exteriors subsequently provided the Pongratzes with an estimate that indicated there was sufficient storm-related damage to warrant a new roof. Accordingly, the homeowners asked that State Farm re-inspect the roof.

On October 20, 2006, a re-inspection was performed by a representative of State

Farm along with two representatives of ABC Exteriors.  State Farm reported no change from its initial assessment of a lack of storm-related damage.

In June 2007, the Pongratzes retained CPM to inspect their roof.  Like ABC Exteriors, CPM also found sufficient storm related damage to warrant a new roof.  This report prompted the Pongratzes to request State Farm to arbitrate the claim, but that request was denied.  Instead, State Farm retained Defendant Structurepoint, an engineering firm, to perform a roof inspection.

After Structurepoint inspected the roof, it opined that there had been intentional damage done to the roof.  State Farm continued to deny the hail damage claim filed by the Pongratzes, but informed them that if they filed a vandalism claim or a police report implicating CPM for intentional damage, the roof would be replaced under their policy's vandalism coverage provisions.  The Pontgratzes refused and retained Tim Lee and T.Lee Engineering to inspect the roof.  Mr. Lee found substantial storm related damage, but State Farm continued to deny coverage.

The Plaintiffs brought this lawsuit after a judgment and award in favor of Mr. Radcliff was rendered in the litigation between he and his company and State Farm.  Plaintiffs claim that State Farm breached its obligations to them under their respective insurance policies and that it acted in bad faith when doing so.   They also claim that Defendants Structurepoint, Donan Engineering, Keeler Webb and William Norman each

conspired with State Farm to cause the contract breach and the tort of bad faith claims handling or breach of an insurance contract.

## Discussion

Under Indiana law a civil conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 168 (Ind.App. 1998). Nevertheless, it is not a stand-alone claim, but seeks to obtain damages resulting from a conspiracy to commit a recognized cause of action. *Id.* Defendants argue first that the underlying cause of action must be a tort, as opposed to a breach of contract, and quote from an Indiana appellate decision in support of that argument: " It is also useful to note that civil conspiracy is not an independent cause of action. Instead, civil conspiracy must be alleged with an underlying tort." *Heyser v. Noble Roman's, Inc.,* 933 N.E.2d 16, 20 (Ind.App. 2010).

In addition, the Defendants maintain that because only an insurer can be liable for the tort of bad faith actions taken in connection with the breach of an insurance contract, *see Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999), the engineering Defendants could not be held liable for damages resulting from a conspiracy to commit the underlying bad faith breach. Finally, Defendants assert that the two-year statute of limitations for a civil conspiracy claim ran prior to the Plaintiffs filing their

complaint in this lawsuit.

**Civil Conspiracy to Breach a Contract**

In *Heyser v. Noble Roman's, Inc.,* 933 N.E.2d 16 (Ind.App. 2010), a franchisee asserted actual and constructive fraud against its franchisor, two financial institutions and additional defendants involved in the franchising process. *Id.* at 17. At the trial court level, the claims against the two financial institutions were dismissed and a partial summary judgment was entered in favor of the franchisor on the constructive fraud claim. *Id*. at 18. The partial summary judgment was based upon a binding statement in open court by franchisee's counsel to the effect that plaintiffs had not pled constructive fraud. *Id*. at 18. The statement by counsel had been made during a hearing on the financial institutions' motion to dismiss. *Id.* On appeal only the partial summary judgment entered against the franchisor was challenged. *Id.* at 17.

No issue with respect to civil conspiracy was decided in *Heyser.* The Court's reference to a separate tort being a necessary foundation for a civil conspiracy claim was made to provide context to its discussion of counsel for plaintiffs' admission with respect to the pleadings lacking an assertion of constructive fraud. *See id* at 19-20. It was a tort claim which underlay the civil conspiracy the plaintiff franchisee maintained he was pursuing against the financial institutions, and the Court was not confronted with the issue of whether a breach of contract claim could be the foundation for a civil conspiracy claim.

*Id.* Nor was that an issue in the other case cited by Defendants in support of their argument. *See Catlin v. Hanser,* 2011 WL 1002736 (S.D.Ind. March 17, 2011).

Importantly, Defendants have referenced no Indiana authority which has opined that a tort is a requirement to pursue a civil conspiracy theory to the exclusion of any other type of underlying civil action. One might expect such a discussion of precedent from the appellate court if its statement with regard to the necessity of an underlying tort was substantively material to the ruling being handed down, especially if precedent did exist which might be interpreted to the contrary and need to be distinguished. Plaintiffs have pointed to just such contrary precedent from the Indiana Court of Appeals, namely *Wade v. Culp*, 23 N.E.2d 615 (Ind.App. 1939).

In *Wade,* George Culp and Charles Wade entered into a contract wherein Culp agreed to furnish Wade, who was an inventor, with shop facilities, materials, money, and engineering and design assistance to enable Wade to develop a working model of a steak broiler which Culp would then take to a manufacturer for production and sale. *Id*. at 616. Wade was to spend his full time and effort pursuing the development of the model broiler. *Id.* Twenty percent of the profits from the enterprise were to go to Wade and Wade was also promised employment on an ongoing basis. *Id.* Wade, with help from an employee of Culp, developed a full working model of a steak broiler and Culp began speaking with manufacturers about production. *Id.* Nevertheless, while Culp was out exploring potential manufacturers, Wade entered into an agreement with Electric Sprayit Company,

assigning his patent rights in the broiler and agreeing to abandon his contract with Culp,

accepting employment full time with Electric Sprayit and allowing Electric Sprayit to

manufacture and sell the broiler. *Id.* Electric Sprayit also entered into an employment

contract with the employee of Culp who had assisted Wade in developing the broiler

model, and informed all those manufacturers solicited by that Culp no longer had rights in

the broiler. *Id.* at 616-17.

Culp sued Wade, Electric Sprayit and others claiming that they conspired to cause

a breach of the contract he had with Wade. *Id.* at 616. He prevailed at the trial court

level and the defendants appealed several of the conclusions of law, including the trial

court's first legal conclusion:

> That the defendants did by their conduct unlawfully confederate and
> conspire together for the purpose of interfering with the plaintiff's contract
> with the defendant, Charles T. Wade, and in preventing the plaintiff from
> the performance of the contract.

*Id.* at 617.

The appellate court accepted the factual finding of the trial court, that the

defendants "did collude and conspire together for the purpose of rendering Culp unable to

perform the contract." *Id.* The court went on to opine:

> Such conduct on the part of the appellants resulted in a loss to the appellee
> and their conduct was therefore wrongful and unlawful. The rule in such
> cases has been announced as follows: "Generally speaking, a combination
> for the purpose of causing a breach of contract is an unlawful conspiracy.
> A person who, by conspiring with another or by collusive agreement with
> him, assists him to violate his contract with a third person and to obtain the

benefit of that contract for himself commits an actionable wrong." 11
Amer.Juris. Sec. 50.

*Id.*

After offering an analysis of authorities which discussed whether coercion or a

threat of force was necessary to hold those other than Wade liable for inducing the

breach, the appellate court determined:

> In the light of the foregoing authorities, it is our opinion that the appellee
> was entitled to recover damages for the loss sustained as a direct and
> proximate result of the appellants' wrong. It was not necessary that the
> various acts of the appellant Wade be induced by fraud, deceit, or coercion
> in order to support the court's first conclusion of law.

*Id.* at 619.

Plaintiffs in the case at bar point to *Wade* as clear authority for allowing a civil

conspiracy claim based upon breach of contract. Defendants argue that *Wade* was the

seed from which grew Indiana's recognition of the tort of interference with the

contractual rights of another, and should not be read as allowing a simple breach of

contract to serve as the underlying cause of action to support a civil conspiracy claim. In

light of the generous standards of notice pleading, which both Indiana and the federal

courts follow, including the lack of any required recitation of legal theories or accuracy in

titling the claims set forth in a complaint, the court is unsure how Defendants' attempt to

distinguish tortious interference with a contract from a conspiracy to breach a contract

makes much of a difference here. *See Christensen v. County of Boone,* IL, 483 F.3d 454,

466 (7th Cir. 2007); *ABN AMRO Mortgage Group, Inc. v. American Residential Services,*

*LLC,* 845 N.E.2d 209, 216 (Ind.App. 2006).

One thing is certain, the law in Indiana is not clear-cut because there is simply no case that unequivocally states that a breach of contract may not support a civil conspiracy claim. For this court to find that the Plaintiffs have no chance of prevailing under Indiana law on a civil conspiracy claim predicated upon breach of contract, it would need to distinguish the language of *Wade* through an intricate analysis of whether there is now a distinction to be made under Indiana law between tortious interference with a contract and a conspiracy to breach a contract. Even then, there would remain a question as to whether any such distinction would necessarily apply to the allegations of this complaint. Such a prediction of how Indiana's highest court might rule is appropriate for a federal district court to make after diversity jurisdiction has been established, *see Thomas v. H & R Block Eastern Enterprises, Inc.,* 630 F.3d 659, 663 (7th Cir. 2011), but it is not an appropriate task for a court to take on when analyzing if diversity jurisdiction exists on the basis of fraudulent joinder. Open issues of law are to be resolved in favor of the plaintiffs, when the issue is whether there was fraudulent joinder. *Paulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992). Accordingly, this court does not find that the engineering Defendants were fraudulently joined on the basis that there is no cognizable claim for civil conspiracy to breach a contract.

**Conspiracy to Commit a Bad Faith Breach of an Insurance Contract**

Because the existence of just one potentially viable claim against the engineering defendants is enough to destroy diversity, the court need not examine in detail the question of whether Indiana law would forbid the pursuit of a non-insurer for conspiring to help an insurer commit the tort. Nevertheless, it is worth pointing out that, like the issue discussed in the preceding section, Defendants cannot point to an Indiana case directly on point. The case upon which Defendants primarily rely establishes only that an employee of an insurer may not be held individually liable for the tort of bad faith, not that there could be no liability under a civil conspiracy theory for conspirators who were not insurers. *See Schwartz v. State Farm Mut. Auto Ins. Co.,* 174 F.3d 875 (7th Cir. 1999). Consequently, whether a non-insurer may be held liable for knowingly assisting an insurer in the commission of the tort of bad faith claims handling appears to be another question of law where the inferences due the Plaintiffs in defending against Defendants' assertion of fraudulent joinder prevents this court from finding for Defendants on the issue of whether there is a cognizable claim.

**Statute of Limitations**

Even though the court has found that the Plaintiffs have pled claims that are substantively sufficient to survive a fraudulent joinder challenge, if those claims are subject to an unquestionably winning defense of which Plaintiffs must have been aware,

fraudulent joinder may still be found. *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 962 (S.D.Ind. 1999). Defendants argue that pursuant to the two-year limitations period set forth in Indiana Code § 34-11-2-4, Plaintiff's civil conspiracy claims are time-barred because their claims for hail damage were denied in 2007 and this lawsuit was not filed until 2011.

Plaintiffs do not quarrel with the application of Indiana's two-year statute of limitations to their civil conspiracy claims; however, they contend that the doctrine of "fraudulent concealment" applies to equitably estop the application of that two-year limitations period. The doctrine of fraudulent concealment applies only if the Plaintiffs establish that the Defendants, through deception or a violation of duty, prevented Plaintiffs from discovering material facts and thereby their cause of action. *City of East Chicago v. East Chicago Second Century, Inc.,* 908 N.E.2d 611, 621-22 (Ind. 2009); *Doe v. Shults-Lewis Child and Family Services, Inc.,* 718 N.E.2d 738, 748 (Ind. 1999).

Defendants' first retort to the Plaintiffs' assertion of fraudulent concealment is that the Complaint is devoid of any accusations or factual allegations in support of their claim. They cite *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011) in support of their argument that the Plaintiffs are required to plead facts which would support a claim of fraudulent concealment.

The court finds Defendants' reliance on *Logan* misplaced. It is true that in

rejecting the plaintiff's fraudulent concealment argument in that case, while affirming the dismissal of the plaintiff's claim under 42 U.S.C. § 1983, the Seventh Circuit commented repeatedly that the plaintiff had not set forth any facts in his amended complaint that would support his contention that the defendants engaged in fraudulent concealment.  *Id*. However, the court in *Logan* was dealing with an *amended* complaint and its main focus in affirming the dismissal was on the fact that the allegations contained factual assertions which  belied any concealment.  *Id*.  In the case before this court, Plaintiffs have not pled facts which would necessarily negate their claim that the engineering Defendants kept from them the fact that they had supplied State Farm with false reports.  Nor is the court working with an amended complaint where plaintiffs might address issues raised in response to the initial pleading.

The Indiana Supreme Court has made it clear that a plaintiff is not required to anticipate an affirmative defense, such as the statute of limitations, when drafting a complaint.  *Nichols v. Amax Coal Co.,* 490 N.E.2d 754 (Ind. 1986).  If the statute of limitations is pled as a defense to a claim, the plaintiff is allowed an opportunity of some sort to offer responsive allegations or evidence before the claim is rejected outright.  *Id*. at 755.  In discussing a plaintiff's assertion of fraudulent concealment in response to a statute of limitations defense, the Indiana Supreme Court found a dissenting opinion at the appellate level compelling and stated:

> We feel we cannot improve upon Judge Ratliff's statement in his dissenting
> opinion which reads as follows:

"Reconciliation of the apparent conflict in our decisions can be accomplished. I believe that a proper interpretation of our decisions and the rules consistent with the concept of notice pleading can be formulated in the following manner: Initially, a plaintiff need not anticipate a statute of limitations defense and plead matter[s] in avoidance in the complaint. If the complaint shows on its face that the statute of limitations has run, the defendant may file a T.R. 12(B)(6) motion. Plaintiff may then amend to plead the facts in avoidance. On the other hand, if the defendant simply answers the complaint setting up the statute of limitations, the plaintiff may, but does not have to, file a reply in avoidance. The defendant may seek summary judgment, in which event it becomes incumbent upon the plaintiff to present facts raising a genuine issue in avoidance of the statute of limitations. If the case goes to trial, the plaintiff must establish the facts in avoidance of the statute of limitations." *Nichols v. Amax Coal Co.* (1985), Ind.App., 482 N.E.2d 776, 778 (Ratliff, J., dissenting to denial of rehearing.)

*Id*. at 755.[2]

So, the question becomes whether or not the court is required to guide the parties through an intricate procedural process to determine whether the Plaintiffs have sufficient evidence of fraudulent concealment to survive a statute of limitations challenge. This court thinks not, and there are two underlying reasons for that conclusion. First, "[t]he usual rule is that removability is determined from the record before the court at the time the notice of removal is filed in the federal court." 14B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3rd ed. 2009)(see supporting cases therein cited at note 12). There was no responsive pleading filed by Defendants prior to their filing of the notice of removal and, therefore, no affirmative

---

[2]Similarly, the federal courts do not require a plaintiff to plead in anticipation of affirmative defenses. *E.g., U.S. v. Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004).

defense asserted in any manner that would have required some reply from the Plaintiffs. Second, the removal statute is to be construed narrowly with all doubts resolved in favor of remand. *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993).

While the court may hold no conviction that the Plaintiffs' claims will survive summary judgment, there is no requirement that Plaintiffs show that their claims can survive that level of scrutiny. Crowe v. Coleman, 113 F.3d 1536, 1541-42 (11th Cir. 1997). The possibility that state law might allow Plaintiffs to recover is all that is necessary to warrant remand and that exists with Plaintiffs' claim that State Farm and the engineering firms hid from them the fact that the firms were providing expert reports tailored to State Farm's requests. This case will be remanded to the Hamilton Superior Court.

**Attorney Fees**

An award of attorney fees is discretionary with a remand. 28 U.S.C. § 1447; *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir. 1999). The court finds no abuse of the removal procedure on the part of Defendants, as it was not objectively unreasonable for them to remove considering the lack of clarity in Indiana law on the substantive civil conspiracy claims. *See Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).

**Conclusion**

For the reasons discussed in this entry, there is no diversity jurisdiction and

Plaintiffs' Motion to Remand (Docket # 23) is **GRANTED**.  Accordingly, this action

shall be remanded forthwith to the Hamilton Superior Court and, pursuant to 28 U.S.C. §

1447(c), a certified copy of this Order of Remand shall be mailed to the Clerk of that state

court.

**SO ORDERED** this 8th day of February 2012.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Michael Paul Bishop
COHEN GARELICK & GLAZIER
mbishop@cgglawfirm.com

Dennis F. Cantrell
CANTRELL, STRENSKI & MEHRINGER, LLP
dcantrell@csmlawfirm.com

Joseph E. Ezzie
BAKER & HOSTETLER LLP
jezzie@bakerlaw.com

Mark A. Johnson
BAKER & HOSTETLER LLP
mjohnson@bakerlaw.com

M. Edward Krause III
COHEN GARELICK & GLAZIER
ekrause@cgglawfirm.com

Michael P Maxwell Jr
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Rand L. McClellan
BAKER & HOSTETLER LLP
rmcclellan@bakerlaw.com

John Mark McKinzie
RILEY BENNETT & EGLOFF LLP
mmckinzie@rbelaw.com

Nicholas Christo Nizamoff
STUART & BRANIGIN
ncn@stuartlaw.com

James  Piatt
PRICE WAICUKAUSKI & RILEY
jpiatt@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com

Tara  Stapleton Lutes
CANTRELL STRENSKI & MEHRINGER, LLP
tlutes@csmlawfirm.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com